## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PATRICK STEWART and LORIE STEWART, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. CIV-18-420- PRW |
| CITY OF OKLAHOMA CITY, a Municipal Corporation and WILLIAM J. CITTY in his individual capacity; VANCE ALLEN, in his individual capacity; and RICHARD MAHONEY, in his individual capacity, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Defendants City of Oklahoma City, William J. Citty, Vance Allen, and Richard Mahoney motion the Court for summary judgment (Dkts. 68, 69, & 85). Plaintiffs assert claims against all defendants for violations of the Federal Wiretap Act[1] and against Defendants Oklahoma City and William Citty for invasion of their constitutional right to privacy pursuant to 42 U.S.C. § 1983.[2] For the reasons outlined below, the motions are granted.

---

[1] 18 U.S.C. § 2510 *et seq.*

[2] *See* Compl. (Dkt. 1) at 19–25.

*Background*

Plaintiff Lorie Stewart and Chris Samples married, but then divorced after having two children. Lorie and Chris shared custody of the children, and both remarried. On an evening when she had custody of the children, Lorie and her husband, Plaintiff Patrick Stewart, an officer in the Oklahoma City Police Department, attended a party while the children stayed at home. Lorie and Patrick told the children they would be home by 11 p.m. That hour came and went without Lorie and Patrick returning home, so the children tried to call them, but their calls went unanswered. The daughter then called her father, Chris Samples, who came to the house and took the children back to his house.

After Chris informed Lorie that the children were at his house, Lorie and Patrick left the party and drove there. On the way, Lorie called Chris. Chris's wife Becky recorded the conversation. Lorie and Patrick soon arrived at Chris's house and Lorie went to the door. Chris—a retired highway patrolman—questioned Lorie's sobriety, and began to perform field sobriety tests on her in the front yard. Patrick saw this and exited the vehicle and engaged in a physical altercation with Chris. Becky Samples video recorded these events on her phone.

Patrick's employer, Defendant City of Oklahoma City, learned of this incident and instituted a disciplinary action against Patrick because of his conduct. Patrick was ultimately demoted. He disputed his demotion and filed a grievance through his union, which triggered arbitration. At the arbitration hearing, Defendants used and referred to the recordings of the incident.

2

Plaintiffs sued all Defendants for alleged violations of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*,[3] and Defendants Oklahoma City and William Citty for invasion of privacy pursuant to 42 U.S.C. § 1983, alleging that the recordings were illegally made, and that the use of the recordings and disclosure of private information at the arbitration hearing violated their privacy. All Defendants move for summary judgment and the individual defendants argue that they are entitled to qualified immunity.[4]

### *Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[6] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[7]

The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[8] If the movant carries this burden, the burden shifts to the nonmoving party to point to "specific facts" in the record demonstrating

---

[3] Also referred to as the Electronic Privacy Act.

[4] *See* Def. City of Okla. City Mot. for Summ. J. & Br. in Supp. (Dkt. 68); Defs. Citty & Allen's Mot. for Summ. J. & Br. in Supp. (Dkt. 68); Mot. for Summ. J. of Def. Richard Mahoney & Br. in Supp. of Mot. (Dkt. 85).

[5] Fed. R. Civ. P. 56(a).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[7] *Id.*

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

that a genuine issue for trial exists.[9] The nonmoving party, in other words, must show that

there is sufficient admissible evidence in the record to enable a rational fact-finder to find

for it.[10] But if the nonmovant "fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of

proof at trial," "Rule 56(c) mandates the entry of summary judgment."[11] The district court

must consider the evidence and all reasonable inferences from the evidence in the light

most favorable to the nonmoving party.[12]

*Analysis*

**Oklahoma City's Motion for Summary Judgment[13]**

Defendant City of Oklahoma City argues it is not subject to liability under the

relevant provisions of the Federal Wiretap Act because, as a municipality, it does not fall

---

[9] *Schulenberg v. BNSF Ry. Co*., 911 F.3d 1276, 1286 (10th Cir. 2018) (quoting *Felkins v. City of Lakewood*, 774 F.3d 647, 653 (10th Cir. 2014)); *see* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must . . . cit[e] to particular parts of material in the record . . . or show[ ] that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

[10] *See Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (citing *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007)); *see also Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2010) ("The question then is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting *Anderson*, 477 U.S. at 251–52)).

[11] *Celotex Corp*., 477 U.S. at 322.

[12] *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

[13] Because it is dispositive, the Court addresses only Defendant City's argument that the relevant FWA provisions are inapplicable to municipalities.

4

within the Act's definition of "person."[14]  The FWA grants a civil cause of action to those aggrieved by a violation of its provisions against the "person or entity, other than the United States, which engaged in that violation."[15]  But Plaintiffs bring their claims against Oklahoma City under §§ 2511(1)(c)-(d), which prohibit "any *person*" from using or disclosing information obtained in violation of the FWA,[16] but do not similarly prohibit an "entity," the category in which a municipality like Oklahoma City falls.[17]  Plaintiffs nevertheless contend that they can sue Oklahoma City for violating §§ 2511(1)(c)-(d) because the FWA's cause of action-creating provision[18] contemplates claims against a "person or entity."

Plaintiffs are wrong. The cause of action creating provision mentions both persons and entities because some of the FWA's substantive provisions prohibit *both* persons and entities from doing certain things. But the prohibitions at issue here, §§ 2511(1)(c)-(d) of the FWA, apply only to a "person," which Oklahoma City is not.[19] Oklahoma City's motion for summary judgment is accordingly granted on the FWA claim.

---

[14] Def. City of Okla. City Mot. for Summ. J. & Br. in Supp. (Dkt. 68) at 22−23.

[15] 18 U.S.C. § 2520(a).

[16] (emphasis added). The FWA defines "person" as "any employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

[17] *See Seitz v. City of Elgin*, 719 F.3d 654, 657 (7th Cir. 2013) (citing *Black's Law Dictionary* 477 (5th ed. 1979)) ("The plain meaning of 'entity' includes government units.")."

[18] *See* 18 U.S.C. § 2520(a).

[19] *See Seitz*, 719 F.3d at 658 (concluding that a municipality cannot be held liable for alleged violations of § 2511(1)(c)-(d), using or disclosing communications intercepted in

**Individual Defendants' Assertion of Qualified Immunity Regarding FWA Claims**

Defendants William Citty and Vance Allen—a police chief and a police captain, respectively—argue that they are entitled to qualified immunity.[20] Defendant Richard Mahoney, an attorney employed by Oklahoma City who represented it at arbitration, also argues that he is entitled to qualified immunity.[21]

Qualified immunity shields the individual defendants from suit and liability under 42 U.S.C. § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[22] When the defense of qualified immunity is invoked, the plaintiff thus must demonstrate "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so (2) that the right was clearly established at the time of the defendant's unlawful conduct."[23] If the plaintiff fails to make either showing, the defendant is entitled to qualified immunity.[24] But "[i]f the plaintiff indeed demonstrates that the [defendant] violated a clearly established

---

violation of the Act, because those sections only protect against actions taken by a "person" and a municipality is not a "person").

[20] *See* Defs. Citty and Allen Mot. for Summ. J. and Br. in Supp. (Dkt. 68).

[21] *See* Mot. for Summ. J. of Def. Richard Mahoney & Br. in Supp. of Mot. (Dkt. 85). Defendant Mahoney argues that he is entitled to both official immunity and qualified immunity. However, he fails to present the Court with any authority that extends official immunity to municipal attorneys acting in an arbitration hearing, so immunity is not appropriate on that basis.

[22] *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*); *see City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (*per curiam*).

[23] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[24] *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

6

constitutional or statutory right, then the burden shifts back to the defendant, who must prove that 'no genuine issues of material fact' exist and that the defendant 'is entitled to judgment as a matter of law.'"[25]

Against this backdrop and resolving all factual disputes and reasonable inferences in the light most favorable to Plaintiffs,[26] the Court concludes that the individual defendants are entitled to qualified immunity. Plaintiffs do not address the elements of the qualified immunity defense, but instead unpersuasively argue that it is inapplicable in cases involving the FWA. Plaintiffs first argue Defendants are not entitled to qualified immunity because the defense is not available for statutory claims, including FWA claims.[27] Plaintiffs' authority does not support this position,[28] and the Tenth Circuit has even

---

[25] *Id.* (quoting *Gross v. Pirtle,* 245 F.3d 1151, 1156 (10th Cir. 2001)).

[26] Even in an analysis of qualified immunity, the Court must resolve all factual disputes and reasonable inferences in the non-moving party's favor. *See Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

[27] Pls.' Resp. in Opp. to Mot. for Summ. J. by Defs. Citty and Allen (Dkt. 94) at 4.

[28] *See Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998) (cited by Plaintiffs) (refusing to apply qualified immunity to the plaintiff's particular statutory claims); *Sawyers v. Norton*, No. 19-1230, 2020 WL 3424927, at *7 (10th Cir. June 23, 2020) (emphasis added) ("To overcome qualified immunity, a plaintiff must show (1) facts that demonstrate the officials violated a federal constitutional or *statutory* right, which (2) was clearly established at the time of the defendant's conduct.").

discussed qualified immunity in the FWA context,[29] indicating that qualified immunity is available as a defense under the FWA.[30]

Second, Plaintiffs argue that *Thompson v. Dulaney*, 970 F.2d 744 (10th Cir. 1992), precludes application of qualified immunity in the FWA context.[31] *Thompson* established the standard for evaluating whether a defendant intentionally used or disclosed information—i.e., whether the defendant had knowledge of the factual circumstances that would violate the FWA.[32] But the qualified immunity analysis and the underlying liability analysis are distinct. Indeed, the effect of successfully invoking qualified immunity is that the defendant is not subject to any liability. Plaintiffs' concern with *Thompson* is thus misplaced.

Plaintiffs thus fail to satisfy their high burden: to the extent they argue that the individual defendants' conduct violated their rights under the FWA, they make no

---

[29] *See Phillips v. Bell*, 365 F. App'x 133, 143 (10th Cir. 2010) (unpublished) (declining to undergo a qualified immunity analysis because the plaintiff failed to state a claim upon which relief could be granted but explaining that it was unlikely that the plaintiff could carry her burden to show that the defendants' alleged disclosure in violation of the FWA violated a statutory or constitutional right).

[30] Other circuits permit qualified immunity as a defense to the FWA. *See John K. Maciver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1015 (7th Cir. 2018) ("We have consistently recognized qualified immunity for alleged Wiretap Act violations."); *Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2001) ("The defense of qualified immunity is available to public officials who are sued under the Federal Wiretap Act."); *Blake v. Wright*, 179 F.3d 1003, 1013 (6th Cir. 1999) ("[W]e believe that the Court intended to apply qualified immunity to statutory violations and we thus hold that a defendant may claim qualified immunity in response to a Title III claim.").

[31] Pls.' Resp. in Opp. to Mot. for Summ. J. by Defs. Citty and Allen (Dkt. 94) at 4–5; Pls.' Resp. in Opp. to Def. Richard Mahoney's Mot. for Summ. J. 31 (Dkt. 95) at 30–31.

[32] *Id.*

argument or showing whatsoever that these rights were clearly established at the time of the violation. Because Plaintiffs failed to carry their burden, Defendants Citty, Allen, and Mahoney are entitled to qualified immunity[33] and their motions for summary judgment on the FWA claims are granted.

### Invasion of Privacy Against Defendants Oklahoma City and William Citty in his individual capacity[34]

Defendants Oklahoma City and William Citty also seek summary judgment on Plaintiffs' invasion of privacy claim.[35] In Plaintiffs' view, Patrick Stewart has "a right of privacy with respect to off-duty conduct involving decisions relating to family relationships, child rearing, unrelated to the performance of his duties," while Lorie Stewart has "a right of privacy to conduct her own personal affairs without intrusion by her husband's employer."[36] According to Plaintiffs, these privacy rights were violated during the 2016 arbitration when Oklahoma City, "acting upon the overly broad interpretation of the Off-Duty conduct policy, disclosed certain private information which was protected by the Constitutional Right of Privacy from unwarranted government intrusion . . . ."[37] And due to the "chilling effect" the policy has on off-duty conduct, Plaintiff Patrick Stewart

---

[33] *Estate of Ceballos*, 919 F.3d at 1212.

[34] Plaintiffs explained in a prior filing that it sues Defendant Citty in his individual capacity only. *See* Pls.' Resp. in Opp. to Def. City of Okla. City & William J. Citty's Mot. to Dismiss (Dkt. 17) at 3.

[35] *See* Def. City of Okla. City Mot. for Summ. J. & Br. in Supp. (Dkt. 68) at 31–34; Defs. Citty & Allen's Mot. for Summ. J. & Br. in Supp. (Dkt. 68) at 8–11.

[36] *Id*.

[37] *Id*. at 22.

asserts he has missed out on numerous events in the lives of his step children "for fear that any confrontation caused by Mr. Samples will cost him his employment."[38]

Oklahoma City contends the incident occurred in public, so Plaintiffs lack a privacy interest in their conduct. Defendant Citty also asserts he is entitled to judgment as a matter of law on this claim because no constitutional violation occurred, as Patrick Stewart "was disciplined because he allowed his intoxicated wife to drive, and while in an intoxicated state at 2:30 a.m., in public, was involved in an inappropriate verbal confrontation,"[39] and not "because of the custody arrangement."[40]

Summary judgment is appropriate because Plaintiffs provide no evidence that private information was disclosed at the arbitration hearing in violation of their constitutional rights to privacy. The right to privacy in personal information possessed by a state derives from the Fourteenth Amendment's Due Process Clause, which "protects fundamental aspects of personal privacy against intrusion by the State."[41] To determine whether personal information is constitutionally protected, the Court considers "(1) if the party asserting the right has a legitimate expectation of privacy [in that information], (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner."[42] To warrant protection, information must be "highly personal or

---

[38] *Id*. at 24.

[39] Defs. Citty & Allen's Reply to Pls.' Resp. to their Mot. for Summ. J. (Dkt. 98) at 7.

[40] *Id*.

[41] *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986).

[42] *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1155 (10th Cir. 2001) (internal quotation omitted).

intimate."[43] Thus, "[i]nformation readily available to the public is not protected by the constitutional right to privacy."[44]

Plaintiffs' provide no evidence to support their allegations that private information was disclosed at the arbitration hearing in violation of their constitutional right to privacy.[45][46] Without record evidence necessary to establish a constitutional violation, this amounts to a "complete failure of proof concerning an essential element of the nonmoving party's case," "render[ing] all other facts immaterial,"[47] so even viewing the facts and evidence in the light most favorable to Plaintiffs, the Court concludes that Oklahoma City and Defendant Citty are entitled to judgment as a matter of law.

---

[43] *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995).

[44] *Id.*

[45] The complaint lays out "certain private information which was protected by the Constitutional Right of Privacy from unwarranted government intrusion," *see* Compl. (Dkt. 1) at 22–24, but those allegations in the Complaint are not evidence, and evidence is what is required at the summary judgment stage.

[46] One of Plaintiffs' responses asserts that "Plaintiffs have stated an invasion of privacy claim," but stating a claim is insufficient at the summary judgment stage. *See* Pls.' Resp. in Opp. to Def. City of Okla. City's Mot. for Summ. J. (Dkt. 93) at 33. The Court also notes that Plaintiffs did not include any additional material facts in their responses. Moreover, while Defendant City cited portions of the arbitration transcript and the arbitration award, these exhibits mostly relate to the authenticity of video evidence. To the extent the arbitration award may be construed to disclose "the private information of an ongoing domestic dispute Plaintiff Lorie Stewart was having with her ex-husband Charles Samples in obtaining physical custody of her children . . . ," *see* Compl. (Dkt. 1) at 22, Plaintiffs do not explain how they have a constitutional right to keep the fact of such a public dispute private.

[47] *Celotex Corp.*, 477 U.S. at 322–23.

*Conclusion*

Accordingly, Defendants' motions for summary judgment (Dkts. 68, 69, and 85) are **GRANTED**. Since summary judgment is granted in favor of Defendants, Plaintiffs' requests for declaratory and injunctive relief are moot.

**IT IS SO ORDERED this 29th day of July, 2020.**

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE